IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN EVANS,<br><br>  Plaintiff,<br><br>v.<br><br>CONNECTIVE RX,<br><br>  Defendant. | Case No. 2:22-cv-1686<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Shawn Evans, by and through his attorney, David M. Manes, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act of 1955 ("PHRA") 43 Pa. Cons. Stat. § 951 *et seq.* Plaintiff alleges that he was terminated in retaliation for requesting reasonable accommodation from Defendant for his disability.

### II. Jurisdiction and Venue

2. This action arises under the ADA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania. The venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under the ADA on June 6, 2022, under charge number 533-2022-01946. *See Exhibit 1*.

6. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on September 26, 2022. This Complaint has been filed within ninety days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2*.

### III. Parties

7. Plaintiff, Shawn Evans ("Plaintiff"), is an adult individual with a primary residence located at 1011 3rd Street, McKees Rocks, Pa 15136

8. Defendant, Connective RX ("Defendant") is an New Jersey business corporation with a regular place of business located at 6000 Park Lane, Building 2, Pittsburgh, Pa 15275.

### IV. Facts

9. Plaintiff began working for Defendant as a Claims Specialist on or about September 6, 2021.

10. At the time of his hiring, Plaintiff informed members of Defendant's management staff that he suffered from chronic digestive issues due to his gall bladder being removed in June of 2020.

11. Plaintiff's chronic digestive issues can flare up, causing numerous digestive and bowel movement problems, such as diarrhea.

12. Plaintiff's medical conditions including his gall bladder and chronic digestive issues constitute a disability under the ADA and the PHRA as they substantially limit one or more major life functions of Plaintiff including his ability to eat, digest, and relieve himself.

13. In addition, Plaintiff was regarded as disabled by Defendant due to the medical issues he informed them of, his unusual bathroom break needs, and his requested accommodations.

14. Defendant had a policy in place that required employees to get permission prior to leaving to use the restroom.

15. Defendant did not like employees to use the bathroom outside of their scheduled breaks.

16. Plaintiff was scheduled for three breaks during the day: a 15-minute break at 9:15 am and 3:00 pm and a half hour lunch break at 12:15 pm.

17. Plaintiff has talked to Human Resources on numerous occasions regarding his stomach issues and asking for an accommodation regarding bathroom breaks.

18. Multiple accommodations could have met Plaintiff's medical needs and allowed him to perform the essential functions of his job without undue burden to the Defendant.

19. For instance, Plaintiff could have been given advance permission to use the restroom in the event of an urgent medical need as long as he completed certain steps at his work station to ensure no customer calls would be missed or dropped during his brief absence.

20. For another example, Defendant could have provided Plaintiff with one or more additional supervisor contacts who could be relied upon to respond in a timely manner to approve Plaintiff's break requests in real time.

21. As another example, Defendant could have helped to accommodate Plaintiff by moving his desk and physical workspace to be closer to the restroom.

22. An additional accommodation that could have worked might have been for Defendant to grant Plaintiff intermittent leave that he could use during particularly bad flare ups of his disability.

23. Plaintiff raised the previous accommodations as proposals to Defendant, but Defendant refused to provide any real accommodation whatsoever.

24. Other accommodations were possible and could have been implemented to allow Plaintiff to keep his job, but Defendant refused to accommodate Plaintiff.

25. During the months of January, February, and March of 2022 (on dates not precisely known to Plaintiff, but readily identifiable from Defendant's internal message records), Plaintiff repeatedly informed Defendant and his supervisors of his disability and that getting permission to go to the bathroom in advance was not always possible, especially when the supervisors he was instructed to seek permission from did not respond to his request in a timely manner.

26. On certain occasions (not precisely known to Plaintiff, but readily identifiable from Defendant's internal message records), Plaintiff messaged numerous supervisors in an attempt to get permission before leaving his station to use the restroom.

27. Due to urgency of Plaintiff's disability when an emergency digestive issue arises, seeking advance permission from management in real time was not always possible because it can take a while for supervisors to respond.

28. In March 2022, Plaintiff had a meeting with his supervisors in regards to his repeated bathroom breaks.

29. Plaintiff had three supervisors he answered to: Nicholas G. (last name unknown), Jennifer Hause, and Chad Herring. Katie Zimmick was the Operations Manager.

30. During this meeting, Plaintiff was advised to SunLife, their Family and medical Leave Act ("FMLA") Administrator.

31. However, Plaintiff did not qualify for FMLA because he had not yet been employed for a year.

32. Defendant offered no real accommodation to allow Plaintiff to keep his job and perform his essential job functions.

33. Plaintiff was instead forced to use his Paid Time Off to use the restroom, but eventually ran out of time.

34. In April of 2022, Plaintiff had another meeting with his supervisors regarding his repeated bathroom breaks.

35. During the second meeting, Defendant did not enter into the interactive process of trying to accommodate Plaintiff's requests.

36. During this meeting, Plaintiff was reminded that he needed permission from his supervisors to use the restroom.

37. In May of 2022, Plaintiff was asked to attend a third meeting with his supervisors, again pertaining to his repeated bathroom breaks.

38. During this entire process, including multiple meetings, Defendant failed to meaningfully enter into the interactive process of trying to accommodate Plaintiff's requests.

39. Every time Plaintiff needed to use the restroom outside of his allotted break times, he would have to message a supervisor. The supervisor did not always get back to Plaintiff in a timely manner that didn't cause Plaintiff's situation to become an emergency.

40. Three weeks after the third meeting, Plaintiff was terminated from his position for going to the restroom without prior permission.

## COUNT I
## Disability Discrimination in Violation of the ADA

41. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

42. It is clear that Plaintiff is a person who qualifies as a disabled individual under the ADA.

43. Plaintiff had chronic stomach issues as a result of his gall bladder removal, which causes him to suffer from digestive issues and bowel movement problems.

44. As an employer with 15 or more employees, Defendant is a qualified employer under the ADA.

45. Plaintiff was a qualified individual for his position, and there is no evidence that he was unqualified to perform the essential functions of his job.

46. Other than discipline directly related to Plaintiff's disability, Plaintiff was never disciplined by Defendant or notified of any performance issues that would give rise to termination.

47. Plaintiff sought an accommodation for his disability, and he attempted to propose multiple possible accommodations in order to work collaboratively with Defendant to find a reasonable solution.

48. However, Defendant refused to provide an accommodation.

49. Defendant failed to participate in the interactive process to seriously evaluate Plaintiff's disability, medical needs, accommodation requests, and possible alternate accommodations.

50. Defendant's failure to accommodate directly led to Plaintiff's termination from employment.

51. Plaintiff was ultimately terminated as a result of his disability, an adverse employment action.

52. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT II
### Retaliation in Violation of the ADA

53. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

54. Plaintiff is disabled within the meaning of the ADA.

55. Plaintiff was also regarded as disabled by Defendant within the meaning of the ADA.

56. Plaintiff engaged in a protected activity when he requested accommodations for his disability.

57. Defendant provided no reason for Plaintiff's termination, other than the fact that he had used the restroom without prior permission.

58. Defendant retaliated against Plaintiff in response to him invoking his rights to reasonable accommodation under the ADA by terminating him.

59. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT III
### Disability Discrimination in Violation of the PHRA

60. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

61. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. Bialko v. Quaker Oats Co., 434 F. App'x. 139, 142 n.5 (3d Cir. 2011) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002).

62. Because Plaintiff is able to state a viable claim of disability discrimination under the ADA, so too will he be able under the PHRA.

63. Plaintiff was qualified to perform the essential functions of his hob.

64. Plaintiff sought accommodation for his disability, which was ignored by Defendant.

65. Plaintiff's disability was therefore disclosed to Defendant.

66. Defendant's refusal to accommodate Plaintiff directly led to his termination.

67. Plaintiff was ultimately terminated as a result of his disability, an adverse employment action.

68. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under the PHRA to be free from discrimination.

### COUNT IV
### Retaliation in Violation of the PHRA

69. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

70. As stated above, in violating the ADA, Defendant thereby violated PHRA.

71. Because Plaintiff is able to state a viable claim of unlawful retaliation under the ADA, so too will he be able under the PHRA.

72. Here, Plaintiff engaged in a protected activity when he requested an accommodation for his disability.

73. Plaintiff's request was ignored and he was told he needed permission to use the restroom.

74. As previously stated, supervisors did not always get back to Plaintiff in a timely manner.

75. Defendant provided no reason for Plaintiff's termination, other than the fact that he had used the restroom without prior permission.

76. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT V

### Failure to Accommodate in Violation of the ADA

77. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

78. Plaintiff was known to Defendant to have a disability within the meaning of the ADA.

79. Plaintiff's requests for accommodation were reasonable and would not have imposed an undue burden on the Defendant.

80. Defendant ignored Plaintiff's requests for accommodation.

81. There was no good faith effort made by Defendant to grant, discuss, negotiate, or follow through with an accommodation for Plaintiff.

82. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT VI

### Failure to Accommodate in Violation of the PHRA

83. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

84. As stated above, in violating the ADA, Defendant hereby violated the PHRA. Defendant is an employer within the meaning of the PHRA.

85. Plaintiff is an employee within the meaning of the PHRA.

86. Plaintiff requested specific and reasonable accommodations that would not have imposed an undue burden on Defendant.

87. Plaintiff was not granted an accommodation.

88. As a result, Plaintiff was unable to get permission to take a restroom break.

89. As a result of Defendant's failure to accommodate, Plaintiff was terminated from his position.

90. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, and against the Defendant, and award all damages available at law and equity, including:

a) Lost back pay resulting from Defendant's wrongful termination of Plaintiff;

b) Lost front pay continuing into the future for Defendant's unlawful conduct;

c) Compensatory damages, including emotional damages and humiliation;

d) Punitive damages to punish Defendant's conduct and to deter similar future conduct;

e) Costs for bringing this action;

f) Attorneys' fees;

g) Pre-judgment and continuing interest; and

h) Any other relief that this Court deems necessary and proper.

Respectfully Submitted,

/s/ David M. Manes
David M. Manes Esq.
PA ID: 314661
**Manes & Narahari LLC**
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
(412) 626-5570 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

**VERIFICATION**

I, Shawn Evans swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Shawn Evans